Vanessa R. Waldref
United States Attorney
Eastern District of Washington
Caitlin Baunsgard
Assistant United States Attorney
Post Office Box 1494
Spokane, WA 99210-1494
Telephone: (509) 353-2767

FILED IN THE U.S. DISTRICT COURT
EASTERN DISTRICT OF WASHINGTON

JUN 1 2 2024

SEAN F. McAVOY, CLERK
SPOKANE, WASHINGTON

UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF WASHINGTON

| | |
|---|---|
| UNITED STATES OF AMERICA, | ) |
| Plaintiff, | ) 2:23-CR-0036-TOR-1 |
| v. | ) |
| BRIAN JESUS ZAZUETA, | ) PLEA AGREEMENT |
| Defendant. | ) |

Plaintiff United States of America, by and through Vanessa R. Waldref, United States Attorney for the Eastern District of Washington, and Caitlin Baunsgard, Assistant United States Attorney for the Eastern District of Washington, and Defendant, BRIAN JESUS ZAZUETA ("Defendant"), both individually and by and through Defendant's counsel, Amy Rubin, agree to the following Plea Agreement:

1. **Guilty Plea and Maximum Statutory Penalties**:

Defendant agrees to enter a plea of guilty pursuant to Fed. R. Crim. P. 11(c)(1)(C) to Count 2 of the Superseding Indictment filed on June 21, 2023, charging Defendant with Possession with Intent to Distribute 50 Grams or More of Actual (Pure) Methamphetamine, in violation of 21 U.S.C. § 841(a)(1), (b)(1)(A)(viii), a Class A felony.

Defendant understands the following potential penalties apply:

  a. a term of imprisonment of not less than 10 years up to a life term;

PLEA AGREEMENT - 1

    b.    a term of supervised release of not less than 5 years and up to a life term;

    c.    a fine of up to $5,000,000;

    d.    denial of federal benefits; and

    e.    a $100 special penalty assessment.

2.    <u>Supervised Release</u>:

Defendant understands that if Defendant violates any condition of Defendant's supervised release, the Court may revoke Defendant's term of supervised release, and require Defendant to serve in prison all or part of the term of supervised release authorized by statute for the offense that resulted in such term of supervised release without credit for time previously served on post-release supervision, up to the following terms:

    a.    5 years in prison if the offense that resulted in the term of Supervised Release is a class A felony,

    b.    3 years in prison if the offense that resulted in the term of Supervised Release is a class B felony, and/or

    c.    2 years in prison if the offense that resulted in the term of Supervised Release is a class C felony.

Accordingly, Defendant understands that if Defendant commits one or more violations of supervised release, Defendant could serve a total term of incarceration greater than the maximum sentence authorized by statute for Defendant's offense or offenses of conviction.

3.    <u>Denial of Federal Benefits</u>:

Defendant understands that by entering this plea of guilty, Defendant is no longer eligible for assistance under any state program funded under part A of Title IV of the Social Security Act (concerning Temporary Assistance for Needy Families) or benefits under the food stamp program or any state program carried out under the Food Stamp Act. 21 U.S.C. § 862a. Defendant also understands that the Court may

PLEA AGREEMENT - 2

deny Defendant's eligibility for any grant, contract, loan, professional license, or commercial license provided by an agency of the United States or by appropriated funds of the United States. 21 U.S.C. § 862.

4. **Potential Immigration Consequences of Guilty Plea:**

If Defendant is not a citizen of the United States, Defendant understands the following:

    a. pleading guilty in this case may have immigration consequences;

    b. a broad range of federal crimes may result in Defendant's removal from the United States, including the offense to which Defendant is pleading guilty;

    c. removal from the United States and other immigration consequences are the subject of separate proceedings; and

    d. no one, including Defendant's attorney or the Court, can predict with absolute certainty the effect of a federal conviction on Defendant's immigration status.

Defendant affirms that Defendant is knowingly, intelligently, and voluntarily pleading guilty as set forth in this Plea Agreement, regardless of any immigration consequences that Defendant's guilty plea may entail.

5. **The Court is Not a Party to the Plea Agreement:**

The Court is not a party to this Plea Agreement and may accept or reject it. Defendant acknowledges that no promises of any type have been made to Defendant with respect to the sentence the Court will impose in this matter.

Defendant understands the following:

    a. sentencing is a matter solely within the discretion of the Court;

    b. the Court is under no obligation to accept any recommendations made by the United States or Defendant;

    c. the Court will obtain an independent report and sentencing recommendation from the United States Probation Office;

PLEA AGREEMENT - 3

    d.    the Court may exercise its discretion to impose any sentence it deems appropriate, up to the statutory maximum penalties;

    e.    the Court is required to consider the applicable range set forth in the United States Sentencing Guidelines, but may depart upward or downward under certain circumstances; and

    f.    the Court may reject recommendations made by the United States or Defendant, and that will not be a basis for Defendant to withdraw from this Plea Agreement or Defendant's guilty plea unless allowed by this Plea Agreement.

6. <u>Waiver of Constitutional Rights</u>:

Defendant understands that by entering this plea of guilty Defendant is knowingly and voluntarily waiving certain constitutional rights, including:

    a.    The right to a jury trial;

    b.    The right to see, hear and question the witnesses;

    c.    The right to remain silent at trial;

    d.    The right to testify at trial; and

    e.    The right to compel witnesses to testify.

While Defendant is waiving certain constitutional rights, Defendant understands Defendant retains the right to be assisted through the sentencing and any direct appeal of the conviction and sentence by an attorney, who will be appointed at no cost if Defendant cannot afford to hire an attorney.

Defendant understands and agrees that any defense motions currently pending before the Court are mooted by this Plea Agreement, and Defendant expressly waives Defendant's right to bring any additional pretrial motions.

7. <u>Elements of the Offense</u>:

The United States and Defendant agree that in order to convict the Defendant of Possession with Intent to Distribute 50 Grams or More of Actual (Pure)

PLEA AGREEMENT - 4

Methamphetamine, in violation of 21 U.S.C. § 841(a)(1), (b)(1)(A)(viii), the United States would have to prove beyond a reasonable doubt the following elements:

> *First*, on or about to March 9, 2023, in the Eastern District of Washington, Defendant possessed a mixture or substance containing a detectable amount of methamphetamine;
>
> *Second*, Defendant possessed this mixture or substance containing a detectable amount of methamphetamine with the intent to distribute it to another person; and
>
> *Third*, the mixture or substance contained more than 50 grams of actual (pure) methamphetamine.

8. <u>Statement of Facts and Stipulation</u>:

The United States and Defendant stipulate and agree to the following: the facts set forth below are accurate; the United States could prove these facts beyond a reasonable doubt at trial; and these facts constitute an adequate factual basis for Defendant's guilty plea.

The United States and Defendant agree that this statement of facts does not preclude either party from presenting and arguing, for sentencing purposes, additional facts that are relevant to the Sentencing Guidelines computation or sentencing, unless otherwise prohibited in this Plea Agreement. The parties further agree and stipulate that this factual basis is simply a summary to support the plea, it does not contain all facts which could be proven by the United States.

The Drug Enforcement Administration ("DEA") was investigating a drug trafficking organization run by "JUNIOR" out of Mexico with distribution operations in the Eastern District of Washington. Through the investigation, multiple controlled purchases spanning from approximately October 27, 2022, through March 2, 2023, as well as audio recorded communications with "JUNIOR" were conducted. During this approximate time frame, "JUNIOR" communicated about and coordinated the particulars of multiple controlled purchases and ultimately sold law enforcement what

PLEA AGREEMENT - 5

the DEA Laboratory has determined to be approximately 1.3 kilograms of actual (pure) methamphetamine, over 2 kilograms of fentanyl pills (approximately 22,000 pills), and 204.243 grams of heroin.

During the investigation, the organization's distribution pattern emerged. The customer would contact "JUNIOR" via WhatsApp or via text message and place an order of controlled substances. The customer and "JUNIOR" would agree to the particulars of the transaction, such as quantity, price, location, timing, etc. "JUNIOR" would then dispatch a drug courier from the Tri-Cities, Washington area to deliver the order to the customer. Defendant was identified as a mid-level manager of the organization.

Through physical and electronic surveillance conducted during the investigation, a suspected stash house was located at 3030 W. 4th Ave., Apt. I-102 in Kennewick, Washington. On March 9, 2023, DEA and the Spokane Police Department executed a federal search warrant on the suspected stash house. Defendant, Brian ZAZEUTA, was in the apartment, just outside a bedroom door and co-defendant Jesus ARMENTA-HIGUERA was located in bathroom area of the apartment. In the apartment, DEA located a large quantity of fentanyl-laced pills, methamphetamine, heroin, as and a small amount of marijuana. Additionally, DEA located multiple receipts of money wire remitters being sent to Sinaloa, Mexico, three drug scales, drug ledgers containing information on drug transactions, four cellular devices, and approximately $6,000 in U.S. Currency. The seized substances were sent to the DEA Laboratory for analysis. The DEA Laboratory has confirmed there was approximately 460.8 grams of actual (pure) methamphetamine, 4,632.804 grams of fentanyl pills (an estimated 42,300 pills), as well as 337.6 grams of heroin.

Defendant stipulates and agrees he possessed the methamphetamine seized in the stash house with the intent to distribute it.

PLEA AGREEMENT - 6

9. <u>The United States Agrees</u>:

   a. *No Additional Charges*:

The United States Attorney's Office for the Eastern District of Washington agrees not to bring additional charges against Defendant based on information in its possession at the time of this Plea Agreement that arise from conduct that is either charged in the Indictment, Superseding Indictment, or identified in discovery produced in this case, unless Defendant breaches this Plea Agreement before sentencing.

   b. *Dismissal of Remaining Counts*:

The Untied States agrees to move to dismiss the remaining counts of the Superseding Indictment at the time of sentencing.

10. <u>United States Sentencing Guideline Calculations</u>:

Defendant understands and acknowledges that the United States Sentencing Guidelines (hereinafter "USSG" or "Guidelines") apply and that the Court will determine Defendant's advisory range at the time of sentencing, pursuant to the Guidelines. The United States and Defendant agree to the following Guidelines calculations:

   a. *Base Offense Level and Relevant Conduct*:

The parties agree and stipulate that more than 90,000 kilograms of converted drug weight was possessed with the intent to distribute, distributed, and attempted to be distributed in furtherance of the criminal activity jointly undertaken by Defendant and his co-conspirators; this amount was within the scope of Defendant's agreement; this amount was reasonably foreseeable to this Defendant in connection with the conspiracy; and this Defendant's relevant conduct for sentencing purposes should be calculated based upon this amount, pursuant to USSG §1B1.3.

Therefore, the parties agree and stipulate that, his base offense level is 38. *See* USSG §2D1.1(a)(5), (c)(1); USSG §1B1.3(a).

PLEA AGREEMENT - 7

b. *Specific Offense Characteristics*:

The United States and Defendant agree to recommend no specific offense characteristics apply. *See generally* USSG §2D1.1(b). Defendant acknowledges he is not eligible for any reduction pursuant to "safety valve" given his leadership status. *See e.g.* USSG §2D1.1(b)(18); USSG §5C1.2; 18 U.S.C. §3553(f).

c. *Role Adjustments*:

The United States and Defendant agree to recommend Defendant receive a 2-level role adjustment for being a leader / organizer in the criminal activity. *See* USSG §3B1.1(c).

d. *Acceptance of Responsibility*:

The United States will recommend that Defendant receive a three-level downward adjustment for acceptance of responsibility, pursuant to USSG §3E1.1(a), (b), if Defendant does the following:

    i. accepts this Plea Agreement;

    ii. enters a guilty plea at the first Court hearing that takes place after the United States offers this Plea Agreement;

    iii. demonstrates recognition and affirmative acceptance of Defendant's personal responsibility for Defendant's criminal conduct;

    iv. provides complete and accurate information during the sentencing process; and

    v. does not commit any obstructive conduct.

The United States and Defendant agree that at its option and on written notice to Defendant, the United States may elect not to recommend a reduction for acceptance of responsibility if, prior to the imposition of sentence, Defendant is charged with, or convicted of, any criminal offense, or if Defendant tests positive for any controlled substance.

PLEA AGREEMENT - 8

e. *Zero Point Offender Reduction*:

The United States and Defendant agree Defendant is not eligible for any reduction given his aggravating role in the offense. *See* USSG §4C1.1(10).

f. *No Other Agreements*:

The United States and Defendant have no other agreements regarding the Guidelines or the application of any Guidelines enhancements, departures, or variances. Defendant understands and acknowledges that the United States is free to make any sentencing arguments it sees fit, including arguments arising from Defendant's uncharged conduct, conduct set forth in charges that will be dismissed pursuant to this Agreement, and Defendant's relevant conduct.

g. *Criminal History*:

The United States and the Defendant have made no agreement and make no representations as to the Defendant's Criminal History Category, which shall be determined by the Court at sentencing after the Presentence Investigative Report is completed.

11. <u>Length of Incarceration</u>:

Defendant acknowledges that this Plea Agreement is entered pursuant to Federal Rule of Criminal Procedure 11(c)(1)(C) ("Rule 11(c)(1)(C)"). Pursuant to Rule 11(c)(1)(C), the United States and Defendant agree that the appropriate disposition of the case is a term of incarceration within the range of at least 120 months but not more than 180 months based on the totality of the circumstances, to include the 18 U.S.C. § 3553(a) factors and Defendant's mitigating information, which Defendant will present to the Court at the time of sentencing.

Although the United States and Defendant agree to make these recommendations to the Court pursuant to Rule 11(c)(1)(C), Defendant acknowledges that no promises of any type have been made to Defendant with respect to the sentence the Court will ultimately impose.

PLEA AGREEMENT - 9

Defendant understands that Defendant may withdraw from this Plea Agreement, as well as withdraw his guilty plea, if the Court imposes a term of imprisonment of greater than 180 months or indicates its intent to do so. Defendant further understands the United States may withdraw from the Plea Agreement if the Court imposes a term of incarceration of less than 120 months.

The United States and Defendant acknowledge that the imposition of any supervised release, fine, or restitution are not part of the Rule 11(c)(1)(C) nature of this Plea Agreement; that the United States and Defendant are free to make any recommendations they deem appropriate as to the imposition of fines, restitution, or length and conditions of Supervised Release; and that the Court will exercise its discretion in this regard. The United States and Defendant acknowledge that the Court's decisions regarding the imposition of fines, restitution, or length and conditions of Supervised Release will not provide bases for Defendant to withdraw Defendant's guilty plea or withdraw from this Rule 11(c)(1)(C) Plea Agreement.

Defendant acknowledges that if either the United States or Defendant successfully withdraws from this Plea Agreement, the Plea Agreement becomes a nullity, and the United States is no longer bound by any representations within it The United States will recommend a term of incarceration of 180 months. Defendant is free to recommend any legal sentence; however, recognizes he cannot be sentenced to less than 120 months, the applicable mandatory minimum.

12.  <u>Supervised Release</u>:

The United States and Defendant each agree to recommend 5 years of supervised release. Defendant agrees that the Court's decision regarding the conditions of Defendant's Supervised Release is final and non-appealable; that is, even if Defendant is unhappy with the conditions of Supervised Release ordered by the Court, that will not be a basis for Defendant to withdraw Defendant's guilty plea, withdraw from this Plea Agreement, or appeal Defendant's conviction, sentence, or any term of Supervised Release.

PLEA AGREEMENT - 10

The United States and Defendant agree to recommend that in addition to the standard conditions of supervised release imposed in all cases in this District, the Court should also impose the following conditions:

    a. that Defendant participate and complete such drug testing and drug treatment programs as the Probation Officer directs, but not to exceed six non-treatment drug tests per month during the imposed term of supervised release; and

    b. that Defendant's person, residence, office, vehicle, and belongings are subject to search at the direction of the Probation Officer.

13.    <u>Judicial Forfeiture</u>:

Defendant agrees to voluntarily forfeit and relinquish all right, title and interest he has in the following listed assets, to the United States:

- $5,823.00 U.S. currency

Defendant acknowledges that the asset listed above is subject to forfeiture to the United States pursuant to 21 U.S.C. § 853 for the offense Possession with Intent to Distribute 50 Grams or More of Actual (Pure) Methamphetamine, in violation of 21 U.S.C. § 841(a)(1), (b)(1)(A)(viii).

Defendant agrees to take all steps as requested by the United States to pass clear title to the assets to the United States and to testify truthfully in any forfeiture proceeding. Defendant agrees to hold all law enforcement agents and the United States, its agents, and its employees harmless from any claims whatsoever arising in connection with the seizure, abandonment, or forfeiture of any asset covered by this agreement.

Defendant further agrees to waive all constitutional and statutory challenges in any manner (including direct appeal, habeas corpus, or any other means) to any forfeiture carried out in accordance with this Plea Agreement on any grounds, including that the forfeiture constitutes an excessive fine or punishment. Defendant knowingly and voluntarily waives his right to a jury trial on the forfeiture of the

PLEA AGREEMENT - 11

asset(s). Defendant waives oral pronouncement of forfeiture at the time of sentencing, and any defects that may pertain to the forfeiture.

Defendant waives further notice of any federal, state or local proceedings involving the forfeiture of the seized assets the Defendant is agreeing to forfeit in this Plea Agreement.

14.  Criminal Fine:

The United States and Defendant agree to recommend the Court impose no criminal fine. Defendant acknowledges that the Court's decision regarding a fine is final and non-appealable; that is, even if Defendant is unhappy with a fine ordered by the Court, that will not be a basis for Defendant to withdraw Defendant's guilty plea, withdraw from this Plea Agreement, or appeal Defendant's conviction, sentence, or fine.

15.  Mandatory Special Penalty Assessment:

Defendant agrees to pay the $100 mandatory special penalty assessment per count of conviction to the Clerk of Court for the Eastern District of Washington, at or before sentencing, pursuant to 18 U.S.C. § 3013.

16.  Payments While Incarcerated:

If Defendant lacks the financial resources to pay the monetary obligations imposed by the Court, Defendant agrees to earn money toward these obligations by participating in the Bureau of Prisons' Inmate Financial Responsibility Program.

17.  Additional Violations of Law Can Void Plea Agreement:

The United States and Defendant agree that the United States may, at its option and upon written notice to the Defendant, withdraw from this Plea Agreement or modify its sentencing recommendation if, prior to the imposition of sentence, Defendant is charged with or convicted of any criminal offense or tests positive for any controlled substance.

PLEA AGREEMENT - 12

18. <u>Waiver of Appeal and Collateral Attack Rights</u>:

Defendant understands that Defendant has a limited right to appeal or challenge Defendant's conviction and the sentence imposed by the Court. Defendant expressly waives his right to appeal his conviction and/or sentence if the Court accepts this Plea Agreement.

Defendant also expressly waives Defendant's right to appeal any fine, term of supervised release, or restitution order imposed by the Court.

Defendant expressly waives the right to file any post-conviction motion attacking Defendant's conviction and sentence, including a motion pursuant to 28 U.S.C. § 2255, except one based on ineffective assistance of counsel arising from information not now known by Defendant and which, in the exercise of due diligence, Defendant could not know by the time the Court imposes sentence.

Nothing in this Plea Agreement shall preclude the United States from opposing any post-conviction motion for a reduction of sentence or other attack upon the conviction or sentence, including, but not limited to, writ of habeas corpus proceedings brought pursuant to 28 U.S.C. § 2255.

19. <u>Withdrawal or Vacatur of Defendant's Plea</u>:

Should Defendant successfully move to withdraw from this Plea Agreement or should Defendant's conviction be set aside, vacated, reversed, or dismissed under any circumstance, then:

    a.    this Plea Agreement shall become null and void;

    b.    the United States may prosecute Defendant on all available charges;

    c.    the United States may reinstate any counts that have been dismissed, have been superseded by the filing of another charging instrument, or were not charged because of this Plea Agreement; and

PLEA AGREEMENT - 13

    d. the United States may file any new charges that would otherwise be barred by this Plea Agreement.

The decision to pursue any or all of these options is solely in the discretion of the United States Attorney's Office.

Defendant agrees to waive any objections, motions, and/or defenses Defendant might have to the United States' decisions to seek, reinstate, or reinitiate charges if a count of conviction is withdrawn, set aside, vacated, reversed, or dismissed, including any claim that the United States has violated Double Jeopardy.

Defendant agrees not to raise any objections based on the passage of time, including but not limited to, alleged violations of any statutes of limitation or any objections based on the Speedy Trial Act or the Speedy Trial Clause of the Sixth Amendment.

20. <u>Integration Clause</u>:

The United States and Defendant acknowledge that this document constitutes the entire Plea Agreement between the United States and Defendant, and no other promises, agreements, or conditions exist between the United States and Defendant concerning the resolution of the case.

This Plea Agreement is binding only on the United States Attorney's Office for the Eastern District of Washington, and cannot bind other federal, state, or local authorities.

The United States and Defendant agree that this Agreement cannot be modified except in a writing that is signed by the United States and Defendant.

\\

\\

PLEA AGREEMENT - 14

Approvals and Signatures

Agreed and submitted on behalf of the United States Attorney's Office for the Eastern District of Washington.

Vanessa R. Waldref
United States Attorney

_____    6/12/2024
Caitlin Baunsgard                   Date
Assistant U.S. Attorney

I have read this Plea Agreement and have carefully reviewed and discussed every part of the agreement with my attorney. I understand and voluntarily enter into this. Furthermore, I have consulted with my attorney about my rights, I understand those rights, and I am satisfied with the representation of my attorney in this case. My attorney has advised me that by pleading guilty to the charges relevant to this Plea Agreement, as of this date deportation appears to be a virtual certainty. No other promises or inducements have been made to me, other than those contained in this Plea Agreement, and no one has threatened or forced me in any way to enter into this Plea Agreement. I am agreeing to plead guilty because I am guilty.

Brian Jesus Zazueta                 6/12/24
BRIAN JESUS ZAZUETA                 Date
Defendant

I have read the Plea Agreement and have discussed the contents of the Plea Agreement with Defendant. The Plea Agreement accurately and completely sets forth the entirety of the agreement between the parties. I have further advised my client by

PLEA AGREEMENT - 15

pleading guilty to the charges relevant to this Plea Agreement, as of this date deportation appears to be a virtual certainty. I concur in Defendant's decision to plead guilty as set forth in the Plea Agreement. There is no legal reason why the Court should not accept Defendant's plea of guilty.

_____      6/12/24
Amy Rubin                                            Date
Attorney for the Defendant

I hereby certify that I have read and translated the entire foregoing document to Defendant in a language with which Defendant is conversant. If questions have arisen, I have notified Defendant's counsel of the questions and have not offered nor given legal advice nor personal opinions.

_____ for      6/12/24
Interpreter  Lupe Caballero              Date

PLEA AGREEMENT - 16